UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GLADYS M. LUGO RODRIGUEZ, | : | |
|     Plaintiff, | : | |
| | : | No. 3:17-CV-00093 (VLB) |
| v. | : | |
| | : | |
| NANCY A. BERRYHILL, ACTING | : | March 2, 2018 |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
|     Defendant. | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION

Plaintiff Gladys M. Lugo Rodriguez ("Plaintiff" or "Lugo Rodriguez") brings this appeal pursuant to 42 U.S.C. § 405(g) and seeks review of the final decision issued by the Commissioner of Social Security ("Defendant") denying her Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Plaintiff moves to reverse the decision, [Dkt. 21], and Defendant moves to affirm, [Dkt. 22]. For the foregoing reasons, Plaintiff's motion is GRANTED and Defendant's motion is DENIED.

## Background

The following facts are derived from the record provided by the Social Security Administration ("SSA"). Plaintiff initially filed an application for SSI on March 23, 2010 alleging an onset disability date of January 1, 2006. [R. 15]. The Social Security Administration ("SSA") initially denied the claim on June 9, 2010, and on reconsideration on October 14, 2010. [R. 15]. Plaintiff filed a request for a hearing, which was held by Administrative Law Judge Roy P. Liberman ("ALJ

1

Liberman") on September 29, 2011. [R. 15, 23]. Plaintiff was not represented by counsel at the hearing and testified in Spanish through an interpreter. [R. 32].

On December 19, 2011, ALJ Liberman denied Plaintiff's SSI claim on December 19, 2011. [R. 23]. ALJ Liberman determined Plaintiff had not engaged in substantial gainful activity since March 23, 2010. He then determined Plaintiff to have the following severe impairments: status post bilateral carpal tunnel release, hypertension, and obesity. [R. 17]. Because ALJ Liberman found the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1 did not match with Plaintiff's severe impairments, ALJ Liberman then evaluated Plaintiff's residual functional capacity ("RFC") as able "to perform light work" with certain limitations. [R. 18]. In consideration of jobs in the national economy ALJ Liberman determined Plaintiff could perform, he concluded Plaintiff was "not disabled." [R. 23].

Plaintiff filed a request for review with the Appeals Council, which was denied on July 22, 2013, [R. 1-6]. Thereafter, Plaintiff filed her appeal in this district. [Dkt. 1 (Compl.)]. On August 28, 2014, Magistrate Judge William I. Garfinkel issued a recommended ruling in which he found remand appropriate for failure to develop the administrative record. [R. 494-98]. Judge Michael P. Shea approved and accepted the recommended ruling in the absence of an objection from either party. *See Rodriguez v. Colvin*, Case No. 3:13-cv-01414-MPS, Dkt. No. 23. The case returned to the SSA for further administrative proceedings.

On remand, the case was assigned to Administrative Law Judge Ronald J. Thomas ("ALJ Thomas"). [R. 404-12]. ALJ Thomas held a hearing on December

7, 2015, and upon request by counsel he held a supplemental hearing on August 1, 2016. [R. 404]. Plaintiff testified at both hearings and impartial vocational experts Albert Sabella and Robert T. Paterwic each testified at one of the hearings (the former at the first hearing, the latter at the supplemental hearing). [R. 404]. Plaintiff's counsel obtained and submitted the outstanding records and ALJ Thomas determined the record to be fully developed. [R. 404].

On October 26, 2016, ALJ Thomas issued a decision denying Plaintiff's SSI application. [R. 412]. Like ALJ Liberman, ALJ Thomas determined Plaintiff had not engaged in substantial gainful activity since March 23, 2010. [R. 407]. However, unlike ALJ Liberman, ALJ Thomas determined Plaintiff did not have a "severe impairment or combination of severe impairments." [R. 407]. ALJ Thomas instead identified Plaintiff to have certain "medically determinable impairments": "status post bilateral carpal tunnel surgeries; tendinitis of the right hand; bursitis and bone spur of the right shoulder; depressive disorder; obesity; plantar faciitis." [R. 407]. These, he reasoned, did not significantly limit her "ability to perform basic work-related activities for 12 consecutive months." [R. 407].

ALJ Thomas compared Plaintiff's testimony to the medical evidence in arriving at his opinion. In evaluating Plaintiff's testimony regarding her symptoms and pain, ALJ Thomas determined that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." [R. 408].

3

**First, he concluded that Plaintiff's complaints about pain in her hand and wrist could not be supported despite several diagnoses. With respect to carpal tunnel syndrome, ALJ Thomas observed two main issues: (a) Plaintiff has been taking care of her grandchild since 2014, she can cook daily, clean, and shop; and (b) Dr. Cruz, a consultative examiner, evaluated Plaintiff in May 2010 and determined she had normal fine and gross manipulation and range of motion, although she felt tenderness to palpitation of the wrists and could not extend her third and fourth fingers. [R. 408-09]. ALJ Thomas also acknowledged Plaintiff obtained a tendinitis diagnosis in November 2012, but he found her pain to be largely managed with treatment and observed "she has been able to care for a toddler full time, and has not had consistent ongoing treatment." [R. 409].**

**Second, ALJ Thomas discussed Plaintiff's complaints of pain in her right shoulder. [R. 409]. She obtained an MRI of her left shoulder in November 2010 and was diagnosed with subacrominal-subdeltoid bursitis, supraspinatous tendinopathy without a rotator cuff tear, and a subacromonial spur; she was referred to orthopedics. [R. 409]. ALJ Thomas noted in November 2012, Plaintiff reported doing well with her right should pain, but she was again referred to orthopedics for a bone spur in her shoulder. [R. 409]. ALJ Thomas also documented that Plaintiff testified she could lift her 23 month old grandchild with difficulty. [R. 409].**

**Third, ALJ Thomas addressed Plaintiff's diagnosis of plantar fasciitis in September 2015. [R. 409]. He referred to treatment notes written by Dr. Liza Goldman Huertas in March 2016, which indicated Plaintiff was caring for her 2**

4

year old and accordingly stopped exercise classes. [R. 409-10, 1018]. In addition, ALJ Thomas commented Plaintiff did not receive ongoing treatment for her left leg or heel pain. [R. 409-10].

Fourth, ALJ Thomas discussed Plaintiff's depression diagnosis[1] from January 2010. [R. 410, 256]. He observed Plaintiff refused mental health treatment in March 2010 but did not articulate that the medical note containing this information also stated Plaintiff's depression was "poorly controlled." [R. 250, 410]. Subsequently, in May 2010 consultative examiner Dr. Lago evaluated Plaintiff and did not observe vegetative signs of depression, finding no mental health diagnosis appropriate. [R. 410]. ALJ Thomas reflected on behavioral health treatment sessions from May and June 2011 and concluded her mental health issues caused no more than "minimal limitations," she responded well to medication, and she no longer had depression. [R. 410].

ALJ Thomas concluded that "the claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities." [R. 411]. However, ALJ Thomas did not reference Plaintiff's obesity diagnosis.

In addition to making findings about each "medically determinable impairment," ALJ Thomas also explained the weight he gave to certain medical experts' medical opinions. Specifically, ALJ Thomas afforded consultative examiner Luis R. Cruz, M.D. ("Dr. Cruz"), "great weight" regarding his "findings of no limitations with fine or gross manipulation and normal range of motion." [R.

---

[1] The medical note states, "Depression/Anxiety – New diagnosis." [R. 256].

5

409]. With respect to Plaintiff's mental health impairments, ALJ Thomas determined the medical opinion of internist and treating physician Kevin Baran, M.D. ("Dr. Baran"), should be given less weight than consultative examiner Jesus A. Lago, M.D. ("Dr. Lago"), because Dr. Baran did not specialize in mental health, unlike Dr. Lago who was a psychiatrist. [R. 411]. ALJ Thomas also gave "little weight" to the medical opinion of J. Grant Thomson, M.D. ("Dr. Thomson")—that Plaintiff could not work on account of her poor prognosis for tendinitis; he made his determination because Plaintiff began caring for her grandchild nine months after seeking treatment. [R. 411]. ALJ did not make any subsequent findings after determining Plaintiff did not have a "severe impairment."

## Discussion

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted). "[A district court] must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Petrie v. Astrue*, 412 F. App'x 401, 403–04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)) (internal quotation marks omitted). "Even if the Commissioner's decision

6

is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F.Supp.2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)).

To be "disabled" under the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The SSA has promulgated the following five-step procedure to evaluate disability claims:

1. First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity ("Step One").

2. If she is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities ("Step Two").

3. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ("Step Three").

4. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the Residual Functional Capacity ("RFC") to perform her past work ("Step Four").

5. Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform ("Step Five").

*Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citing 20 C.F.R. § 404.1520). Ms. Lugo Rodriguez challenges Step Two.

At Step Two, the Court must evaluate the medical opinions and evidence to determine whether the plaintiff has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 1520(a),(c). Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and examples are as follows:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in routine work setting.

20 C.F.R. § 404.1522(b). Severity is based on the individual's *limitations* from the impairment, not solely the diagnosis. *See Hawver v. Comm'r of Soc. Sec.*, No. 6:15-CV-1517, slip op. at 3 (N.D.N.Y. Jan. 13, 2017); *Burrows v. Barnhart*, No. 3:03cv342, 2007 WL 708627, at *6 (D. Conn. Feb. 20, 2007). The regulations prohibit the ALJ from considering the plaintiff's age, education, and work experience at this stage. 20 C.F.R. § 404.1520(c). A finding that the impairments are non-severe stops the analysis and the individual is determined to be not disabled. *Id.*;

The purpose of Step Two is to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

158 (1987)); *Griffies v. Astrue*, 855 F. Supp. 2d 257, 267 (D. Conn. 2012); *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) ("According to the Commissioner's own policy, the threshold severity test should only be used as a *de minimis* screening device to eliminate frivolous claims."); *Hawver*, No. 6:15-CV-1517, slip op. at 3. In other words, any claim in which the medical evidence establishes more than a "slight abnormality" with "no more than a minimal effect on an individual's ability to work" should be determined "severe." *Yuckert*, 482 U.S. at 154 n.12. Step Two should not be utilized to deny benefits from a claimant who fits within the statutory definition without considering whether the impairment prevents her from having prior work or substantial gainful employment available in the national economy, given her age, education, and work experience. *Id.* (citing *Yuckert*, 482 U.S. at 158).

I. <u>ALJ Thomas Does Not Indicate He Considered Obesity</u>

As an initial matter, reversal is appropriate because ALJ Thomas did not reference obesity at all in his Step Two analysis despite determining it was a "medically determinable impairment." [R. 407]. "[T]he ALJ is required to consider the effects of obesity in combination with other impairments throughout the five-step evaluation process." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 309 (D. Conn. 2010). This is in part because it can have the effect of "increase[ing] the severity of coexisting impairments, particularly those affecting the musculoskeletal, cardiovascular and respiratory systems." *Id.* Because there is no indication that obesity was considered at all, ALJ Thomas must revisit the

9

record and consider whether obesity tips the scale in favor of finding Plaintiff has a "severe impairment."

## II. The ALJ Improperly Apportioned Weight to Medical Opinions

In making the determination, ALJ Thomas gave "little weight" to treating physician, Dr. Thomson's medical opinion; "more weight" to the consultative examiner, Dr. Lago, than the treating physician, Dr. Baran; and "great weight" to the consultative examiner, Dr. Cruz. [R. 408-11]. Plaintiff challenges each determination.

There is a tiered system for which weight is apportioned to the medical opinions of the medical experts in a given case. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions. 20 C.F.R. § 404.1527(a)(1). An ALJ must evaluate and weigh each medical opinion. 20 C.F.R. § 404.1527(c). Typically, a treating physician's opinion on the severity of an impairment is to be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

In all other circumstances—i.e. when a treating physician is not given "controlling weight" or when the medical opinion comes from any other medical source—an ALJ must consider enumerated factors under 20 C.F.R. §

404.1527(c)(1)-(6). First, the ALJ generally must give more weight to a medical expert who examines the claimant than one who has not examined the claimant. 20 C.F.R. § 1527(c)(1). Second, a medical opinion from a treating physical is generally given more weight "since sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. 404-1527(c)(2). Third, there should be a correlation between the weight a medical opinion is given and the amount of relevant evidence presented to support those opinions, "particularly medical signs and laboratory findings." 20 C.F.R. § 404.1527(c)(3). Fourth, medical opinions are given more weight when they are consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4). Fifth, medical opinions from a specialist in the field is typically given more weight than those from non-specialist sources. 20 C.F.R. § 404.1527(c)(5). An ALJ may also address any other relevant factor brought to his attention. 20 C.F.R. § 404.1527(c)(6).

    A. *Treating Physicians*

ALJ Thomas evaluated the medical opinions of two treating physicians: Dr. Thomson and Dr. Baran. He determined the medical opinion from treating physician, Dr. Thomson, should be given "little weight" and the medical opinion relating to mental health from treating physician, Dr. Baran, should be given less

weight than the mental health evaluation administered by the consultative examiner, Dr. Lago.

Where an ALJ does not assign "controlling weight" to a treating physician's opinion, he must "consider certain factors to determine how much weight to give it, and should articulate 'good reasons' for the weight given." *See Camille v. Colvin*, 652 F. App'x 25, 27 (2d Cir. 2016) (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1998) (requiring an ALJ to "provide a claimant reasons when rejecting a treating source's opinion"); *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) ("The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion.").

With respect to Dr. Thomson, the Court finds ALJ Thomson's determination is not supported by substantial evidence. *See Halloran*, 362 F.3d at 32. ALJ Thomas referred to Dr. Thomson's January 2014 evaluation of Plaintiff's tendinitis in a Connecticut Department of Social Services ("DSS") Medical Report for Incapacity wherein Dr. Thomson stated Plaintiff's tendinitis in her right wrist had a prognosis of "poor—she will always have pain." [R. 787]. Dr. Thomson also opined Plaintiff will never be able to work. [R. 787]. ALJ Thomas concluded that this opinion should be given "little weight" because Plaintiff (1) "resumed use of her right hand shortly after" in the sense that she began caring for her grandchild

nine months later and lifted with difficulty; and (2) did not seek ongoing or consistent treatment. [R. 411].

The first problem with this conclusion is that it appears ALJ Thomas did not adequately consider whether Dr. Thomson's medical opinion should be given "controlling weight" as it presumptively should. He did not evaluate whether the opinion was supported by medically acceptable clinical or laboratory techniques or that it was otherwise supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(2). It is well-established that "[t]he opinion of a treating physician on the nature or severity of a claimant's impairments is binding if it is supported by medical evidence and not contradicted by substantial evidence in the record." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). In failing to address the medical evidence or substantial evidence in the record, there is no basis to conclude it appropriate to stray from the otherwise binding rule.

The second problem is ALJ Thomas inserted his opinion into the fold without providing a "good reason" as to why Dr. Thomson's evaluation was not entitled to "controlling weight." The Second Circuit has made clear that "[t]he ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see Selian*, 708 F.3d at 419 (finding error when the ALJ's conclusion "constituted an improper substitution by the ALJ of [his] own lay opinion in place of medical testimony"); *see also Griffies*, 855 F. Supp. 2d at 271 ("The ALJ offered no meaningful explanation in assigning Dr. Romano's opinion 'little weight.'"). Moreover, an ALJ must affirmatively present

13

"specific contradictory evidence" when disregarding a treating physician's opinion. *Griffies*, 855 F. Supp. 2d at 272. Plaintiff's ability to use her hand in some capacity does not negate the pain she feels or a medical expert's assessment of her pain. Nor does her inability to have regular treatment necessarily mean she did not suffer from a severe impairment.

The third problem is ALJ Thomas did not appear to have considered subsections (1) through (6) of 20 C.F.R. § 404.1527(c), which an ALJ is required to consider when electing *not* to give a treating physician's medical opinion "controlling weight." *See* 20 C.F.R. § 404.1527(c)(1)-(6). The record indicates Plaintiff was a patient of Dr. Thomson's for approximately nine years from April 2006 until March 2015, [R. 222, 968-69], which suggests he would be "most able to provide a detailed, longitudinal picture" of Plaintiff's impairment and could "bring a unique perspective to the medical evidence" not apparent in the objective medical findings of other experts, 20 C.F.R. § 404.1527(c)(2). The Court finds ALJ Thomas's assessment of Dr. Thomson's medical opinion is not supported by substantial evidence.

The Court now turns to ALJ Thomas's evaluation of Dr. Baran's medical opinion. While Plaintiff has not provided a legal analysis as to why Dr. Baran's medical opinion is entitled to greater weight than it was given, the Court nonetheless identifies similar issues with ALJ Thomas's assessment of Dr. Baran's medical opinion as those of Dr. Thomson. The Court instructs ALJ Thomas to reassess whether Dr. Baran's medical opinion of Plaintiff's mental health should be given "controlling weight" as he appears to be the physician

who treated her for depression, hypertension, and difficulty with sleeping. *See, e.g.,* [R. 333]. An ALJ may not make an arbitrary decision to credit a consultative examiner's opinion over that of a treating physician. *See Wilson v. Colvin*, No. 2016 WL 5462838, at *12 (Sept. 28, 2016) ("the ALJ's decision to credit the opinion of the consultative examiner over plaintiff's treating physicians is, as best the Court can tell from the record, an arbitrary one."). If Dr. Baran's medical opinion should not be given "controlling weight," ALJ Thomas must then consider the requisite factors under 20 C.F.R. § 404.1527(c)(1)-(6).

    B. *Consultative Examiner*

ALJ Thomas gave "great weight" to the medical opinion of consultative examiner Dr. Cruz, who evaluated Plaintiff on April 27, 2010. [R. 312]. Dr. Cruz observed Plaintiff "appeared in no acute distress although she was wearing braces [o]n both wrists," but that she otherwise had a normal gait, did not use an assistive device, and "had no difficulty getting on and off the examine [sic] table." [R. 312]. Dr. Cruz also stated with respect to Plaintiff's osteomuscular system:

> Tenderness to palpitation of both wrists. She complains of pain and tingling sensation radiating from the wrist to the elbows mostly in the right upper extremity. No evidence of muscle wasting. She was unable to fully extend the third and fourth right digits. The range of motion of all other extremities were normal as well as fine and gross manipulation abilities with her hands.

[R. 313]. Dr. Cruz also noted a "[d]ecreased pinprick below the right elbow." [R. 313]. Her final impressions included four issues: "(1) Status post bilateral carpal tunnel release; (2) Residual numbness and tingling sensation on the right side; (3) History of hypertension; [and] (4) History of depression." [R. 313].

15

ALJ Thomas concluded he "has given great weight to these findings of no limitations with fine or gross manipulation and normal range of motion." [R. 409]. But Dr. Cruz's notations reflect range of motion limitation in her third and fourth fingers. [R. 313]. The Court agrees with Plaintiff that ALJ Thomas appears to have selected only certain findings favorable to his conclusion that Plaintiff did not have a "severe impairment" and disregarded all other findings that could suggest "severe impairment." Moreover, the Second Circuit cautions ALJs against "rely[ing] heavily on the findings of consultative physicians after a single examination." *Selian*, 708 F.3d at 419; *see Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) (justifying giving a consultative physician limited weight "because 'consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons'") (quoting *Torres v. Bowen*, 700 F. Supp. 1306, 1312 (S.D.N.Y. 1988)). This general principle compounds risk of error in putting too much weight on this particular fractured medical opinion. Thus, the Court finds ALJ Thomas erred in determining "great weight" should be afforded to only a portion of the medical expert's opinion. *Selian*, 708 F.3d at 418-19 (criticizing the ALJ's characterization of medical experts' "conflicting" evidence when the record instead demonstrated the medical opinions appeared to concur).

III. <u>Plaintiff's Complaints of Pain and Other Limitations</u>

Plaintiff argues ALJ Thomas gave short shrift to Plaintiff's consistent complaints of pain. This argument contemplates Plaintiff's complaints of other symptoms and limitations. Although ALJ Thomas did not make an explicit finding about Plaintiff's credibility, he appears to base his Step Two determination largely upon the fact that she is able to care for her grandchild and do other household activities during the week. *See* [R. 408-11].

There are numerous instances in which ALJ Thomas's analysis is incomplete or inaccurate with respect to Plaintiff's symptoms, expression of pain, and the impact on her life. For example, in determining Dr. Thomson's medical opinion about Plaintiff's tendinitis should be afforded "little weight," ALJ Thomas indicated the following:

> He stated that the claimant was unable to use her right hand and would "never" be able to return to work. However, 9 months later, the claimant was caring for her grandchild full time. She testified she feeds and changes diapers. She lifts with difficulty. The undersigned gives little weight to this opinion, as the claimant resumed use of her right hand shortly after. Moreover, she did not seek ongoing or consistent treatment for her right hand.

[R. 411]. While this testimony is true, ALJ Thomas did not acknowledge Plaintiff's testimony that she cannot lift a gallon of milk with one hand, [R. 433], that she drops dishes, [R. 433-34], that she has pain running up her left leg, [R. 434], that she cannot sleep at night because of the pain in her shoulder and is tired during the day as a result, [R. 436], and that she picks up her granddaughter by putting her arms under her granddaughter's armpits because she is afraid if she uses her hands she will drop her granddaughter, [R. 444].

17

In general, an ALJ is required to consider "*all* [a claimant's] statements about [her] symptoms, including pain, and any description [her] medical sources or nonmedical sources may provide about how the symptoms affect [her] activities of daily living and [her] ability to work." 20 C.F.R. § 404.1529(a). At Step Two, a claimant's "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether [the] impairment or combination of impairment(s) is severe." 20 C.F.R. § 404.1529(d)(1). In reviewing the record at Step Two and beyond, the ALJ must take care to consider all of Plaintiff's descriptions of her symptoms in conjunction with the objective medical evidence. *See Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *6 (E.D.N.Y. Mar. 19, 1999) (stating a plaintiff's subjective statements must be considered along with objective medical evidence). Here, Plaintiff did not just testify about her ability to care for her grandchild, but rather she drops dishes and cannot pick up a gallon of milk without using two hands. [R. 433]. She testified that her daughter assists her when she grocery shops, [R. 435], and that her son is always with her to help care for her grandchild, [R. 442]. Ms. Lugo Rodriguez testified that she cannot pick her grandchild up with her hands because she is afraid she will drop her. [R. 444]. Moreover, there is objective medical evidence establishing Plaintiff's limitations and pain, such as Dr. Thomson's opinion that Ms. Lugo Rodriguez will always have pain, R. 787], and consultative examiner Dr. Cruz's notes that she was "unable to fully extend the third and fourth right digits." [R. 313]. In conclusion, *all* of Plaintiff's complaints of pain, other symptoms, and her

18

**limitations in conjunction with objective medical evidence warrant remand for further consideration.**

## Conclusion

**For the aforementioned reasons, the Court REVERSES the administrative decision and REMANDS the case for further proceedings. The Clerk is directed to close this case.**

                                        IT IS SO ORDERED

                                        _____/s/_____

                                        Hon. Vanessa L. Bryant
                                        United States District Judge

**Dated at Hartford, Connecticut: March 2, 2018**